USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/07

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re: CALPINE CORPORATION, et al.,

                              Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LAW DEBENTURE TRUST COMPANY OF
NEW YORK, solely in its capacity as First
Lien Indenture Trustee,

                              Plaintiff,

      - against -

CALPINE CORPORATION, et al.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**OPINION AND ORDER**

**Chapter 11**
**United States Bankruptcy**
**Court, Southern District**
**of New York**
**05-60200 (BRL)**
**Jointly Administered**

**Adversary Proceeding**
**06-01461-BRL**

**06 Civ. 5185 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      Law Debenture Trust Company of New York, solely in its capacity as

indenture trustee ("Trustee") under the indenture ("Indenture") for the 9.625%

First Priority Senior Secured Notes Due 2014 issued by Calpine Corporation

("Calpine") on September 30, 2004 (the "Notes"), appeals two orders by Judge

Burton R. Lifland of the United States Bankruptcy Court for the Southern District

of New York.  In the first order, dated May 10, 2006 and amended on May 17,

2006 (collectively the "Repayment Order"), Judge Lifland, pursuant to sections

363(b) and 105(a) of title 11 of the United States Code, authorized the above

captioned debtors ("Debtors") to repay the outstanding principal on the Notes

without paying a premium (the "Make-Whole Premium") that the Trustee claims is

due as a result of such repayment.[1]  In the second order, dated June 21, 2006 (the

"Extension Order"), the bankruptcy court granted Debtors' motion to extend their

time to answer or otherwise plead to the Trustee's complaint seeking payment of

the Make-Whole Premium and denied the Trustee's request to move for summary

judgment on its Make-Whole Premium demand without prejudice.[2]  For the

following reasons, the Repayment Order is affirmed while the Trustee's appeal of

---

[1]      *See* 5/10/06 Order Authorizing Repayment of Principal of First Lien
Debt; 5/17/06 Amended Order Authorizing Repayment of Principal of First Lien
Debt.

[2]      *See* Transcript of 6/21/06 Bench Ruling of Judge Lifland ("6/21/06
Bench Ruling") at 64-67.

the bankruptcy court's Extension Order and denial of the Trustee's request to move for summary judgment is dismissed for lack of appellate jurisdiction.

## II.    BACKGROUND

### A.    The Notes

On September 30, 2004, Calpine issued the Notes in the aggregate amount of $785 million.[3]  The Notes and several series of second lien debt (the "Second Lien Debt") are secured by a common collateral package pursuant to a Collateral Trust Agreement dated July 16, 2003.[4]  The collateral securing the Notes includes substantially all of the assets owned by Calpine, except for certain "Excluded Assets."[5]  All liens securing the Second Lien Debt are subject to and subordinate to the liens securing the Notes.[6]

### B.    The Make-Whole Premium

Section 3.05(b) of the Indenture provides that

> [a]t any time prior to October 1, 2009, [Calpine] may also redeem all or part of the . . . Notes . . . at a redemption price equal to

---

[3]    *See* Debtors' Motion for Order Authorizing Repayment of First Lien Debt ("Repayment Motion") ¶ 9.

[4]    *See* Opening Brief of Appellant at 5.

[5]    *Id.* at 6.

[6]    *See id.*

-3-

100% of the principal amount of Notes redeemed plus the [Make-Whole] Premium as of, and accrued and unpaid interest, if any to the date of the redemption, subject to the rights of Holders of Notes on the relevant record date to receive interest due on the relevant interest payment date.[7]

As of June 1, 2006, the Make-Whole Premium amounted to approximately $95.5 million.[8]

## C. Calpine's Bankruptcy Proceedings

On December 20, 2005, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[9] Debtors are currently operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.[10] On January 6, 2006, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.[11]

---

[7]     *Id.*

[8]     *See id.* at 7.

[9]     *See* 11 U.S.C. § 1101, *et seq.*; 12/20/05 Voluntary Petition of Calpine Corporation.

[10]    *See* 11 U.S.C. at §§ 1107, 1108; Repayment Motion ¶ 6.

[11]    *See* 11 U.S.C. at § 1102; Repayment Motion ¶ 7.

### D.     The Effect of the Notes on Debtors' Estates

When Debtors commenced their reorganization cases in December

2005, the total amount of outstanding principal of the Notes was approximately

$646.11 million.[12]  In April 2006, Debtors estimated their estates would save

approximately $2.3 million per month, or approximately $27.6 million per year, by

repaying the Notes.[13]  The Notes were secured in part by certain natural gas assets

owned by Calpine.[14]  After Calpine sold these assets, the Indenture required

Calpine to deposit the proceeds, which totaled approximately $412 million, in a

designated bank account (the "Control Account").[15]  The Indenture restricted the

use of the asset-sale proceeds and primarily required Calpine to use the proceeds

to pay down secured debt.[16]  The asset-sale proceeds earned interest in the Control

Account at a rate of 4.42% while Debtors paid interest on the Notes at a rate of

9.625%.[17]  As a result of this interest rate differential, Debtors' estates were losing

---

[12]     *See* Reply Brief of Debtors-Appellees at 3.

[13]     *See id.* at 4; Repayment Motion ¶ 16.

[14]     *See* Reply Brief of Debtors-Appellees at 3.

[15]     *See id.*

[16]     *See id.*

[17]     *See id.*

approximately $1.65 million per month.[18] To prevent this loss from occurring
further, Debtors sought to use the asset-sale proceeds to repay the Notes.[19]

Because the asset-sale proceeds satisfied only part of the total amount
due under the Notes, Debtors planned to use approximately $233.7 million from
their debtor-in-possession financing (the "DIP Facility") to repay the remainder.[20]
The interest rate on the DIP Facility was approximately 7.9%, which was lower
than the 9.625% interest rate on the Notes.[21] According to Debtors, using the
$233.7 million from the DIP Facility to repay the Notes would save Debtors'
estates an additional $310,000 per month.[22]

To obtain the approval of their secured creditors for their use of the
DIP Facility, Debtors agreed to pay the Noteholders' counsel and advisor fees in

---

[18]   *See id.*

[19]   *See id.*

[20]   *See id.*

[21]   *See id.* at 3-4.

[22]   *See id.* at 4.

the chapter 11 cases.[23]  These fees totaled approximately $350,000 per month.[24]

According to Debtors, repaying the Notes would reduce or eliminate these fees.[25]

### E.    Debtors' Repayment Motion and the Bankruptcy Court's Ruling

In order to prevent these continuing losses, Debtors filed their

Repayment Motion on April 19, 2006 seeking bankruptcy court approval, pursuant

to sections 105(a) and 363(b) of title 11 of the United States Code, to repay the

entire amount of the outstanding principal of the Notes.[26]  The Trustee objected

because Debtors' Repayment Motion did not seek to pay Noteholders the Make-

Whole Premium, which the Trustee claimed was triggered by Debtors' Repayment

Motion.[27]  In response, Debtors argued that repayment of the outstanding principal

of the Notes did not trigger payment of the Make-Whole Premium, but

nevertheless requested that all parties "reserve all rights to litigate the disputed

---

[23]     *See id.*

[24]     *See id.*

[25]     *See id.*

[26]     *See* Repayment Motion.  Debtors' Repayment Motion was supported
by the Creditors' Committee.  *See* Statement of the Official Committee of
Unsecured Creditors of Calpine Corporation, *et al.* in Support of Debtors' Motion
for Order Authorizing Repayment of Principal of First Lien Debt.

[27]     *See* Objection of Law Debenture Trust Company of New York, Solely
in Its Capacity as First Lien Trustee, to the Debtors' Motion for Order Authorizing
Repayment of Principal of First Lien Debt.

makewhole premium issue at the appropriate stage of these reorganization cases;
for example, in the context of the plan confirmation or claims reconciliation
processes . . . ."[28]  Before the bankruptcy court was scheduled to hold a hearing on
the Repayment Motion, the Trustee initiated an adversary proceeding to litigate its
Make-Whole Premium demand.[29]

On May 10, 2006, the bankruptcy court held a hearing on the
Repayment Motion and approved Debtors' request to repay the outstanding
principal of the Notes without paying the Make-Whole Premium.[30]  In an oral
ruling, Judge Lifland concluded that it was "highly appropriate" and "in the best
interest of the estate" for Debtors to stop "hemorrhaging" cash and repay the
outstanding principal of the Notes.[31]  Accordingly, Judge Lifland held that
"Section 363 offers the appropriate use of cash . . . [a]nd to the extent [section]
105 applies here, to back stop that . . . it is appropriate for the Debtor[s] and those
creditors of the estate to receive those payments at this particular point in time."[32]

---

[28]    Repayment Motion ¶ 4.

[29]    *See* Reply Brief of Debtors-Appellees at 4; Complaint ("Compl.").

[30]    *See* Transcript of 5/10/06 Bench Ruling of Judge Lifland ("5/10/06
Bench Ruling") at 82-86.

[31]    *Id.* at 82.

[32]    *Id.* at 83.

-8-

Judge Lifland also noted that the request for the Make-Whole Premium was "almost unseemly given the fact that the recipients [were] about to be made whole."[33]  Judge Lifland did not rule on, and preserved all parties' rights with respect to Debtors' request to postpone litigation over the Trustee's Make-Whole Premium demand because that issue had become the subject of the Trustee's adversary proceeding.[34]  Following his oral ruling, Judge Lifland entered an order authorizing Debtors to repay up to $646.11 million of principal of the Notes pursuant to sections 363(b) and 105(a) of title 11 of the United States Code.[35]  After entry of the Repayment Order, Debtors paid the Trustee a total of $654,735,097.74, an amount equal to the entire outstanding balance of principal and accrued interest due on the Notes.[36]  The Trustee filed its appeal on May 15, 2006.[37]

---

[33]  *Id.* at 82.

[34]  *See id.* at 83-84; Repayment Order ¶¶ 2-3.

[35]  *See* Repayment Order.  The bankruptcy court also denied, without prejudice, the Trustee's request for confirmation that its claim for the Make-Whole Premium would continue to be secured by the liens provided by the Indenture and would bear interest. *See id.* ¶ 4.  The Trustee has not appealed this aspect of the Repayment Order.

[36]  *See* Opening Brief of Appellant at 9.

[37]  *See* 5/15/06 Notice of Appeal.

-9-

**F.     The Adversary Proceeding, Debtors' Extension Motion, and the Bankruptcy Court's Ruling**

On May 5, 2006, the same day it objected to Debtors' Repayment

Motion, the Trustee initiated an adversary proceeding by filing a complaint

seeking, among other things, a declaratory judgment that the Make-Whole

Premium was due under the Indenture as a result of the granting of Debtors'

Repayment Motion.[38]  The Creditors' Committee was subsequently authorized to

intervene in the adversary proceeding.[39]  On June 16, 2006, Debtors, pursuant to

section 105(a) and Federal Rule of Bankruptcy Procedure 9006(b), filed a motion

for an extension of time to respond to the Trustee's complaint on the grounds that

it was more appropriate to litigate the Trustee's Make-Whole Premium claim at a

later stage of the reorganization proceedings, Debtors required more time to

investigate the Trustee's claims and fully prepare a responsive pleading, and the

issues presented by the Trustee's complaint and its appeal from the Repayment

---

[38]      *See* Opening Brief of Appellant at 9-10; Compl. ¶ 56. The Trustee
filed its amended complaint on June 6, 2006 also seeking, among other things, a
declaratory judgment that the Make-Whole Premium is due. *See* First Amended
Complaint ¶¶ 59-60.

[39]      *See* 5/30/06 Stipulation and Order Authorizing Intervention By The
Official Committee of Unsecured Creditors.

Order were "inextricably intertwined."[40] The Trustee objected to Debtors' motion

arguing that Debtors' request for an extension constituted a request for an

injunction, was designed to "gain unfair leverage against . . . Noteholders in order

to effect a more advantageous compromise or other resolution," the issues raised

on appeal were distinct from those in its complaint, and Debtors' claim that it

needed more time to investigate the Trustee's claims was not credible.[41]  The

Trustee also maintained that the issue of whether the Make-Whole Premium was

due could be resolved on summary judgment by interpreting the language of the

Indenture without extrinsic evidence and requested permission, pursuant to Rule

7056-1(a) of the Local Rules for the United States Bankruptcy Court for the

Southern District of New York, to file a motion for summary judgment.[42]

---

[40]     Debtors' Motion For Extension of Time to Answer or Otherwise
Plead to the First Lien Trustee's First Amended Complaint ("Debtors' Extension
Motion") at 6-8. The Creditors' Committee joined Debtors' Extension Motion.
*See* Statement of the Official Committee of Unsecured Creditors of Calpine
Corporation, *et al.* in Support of the Debtors' Motion For Entry of an Order
Pursuant to 11 U.S.C. § 105 and Rule 9006 Extending Adversary Proceeding
Response Date.

[41]     Objection of Law Debenture Trust Company of New York, Solely in
its Capacity as First Lien Trustee, to Debtors' Motion For Extension of Time to
Answer or Otherwise Plead to the First Lien Trustee's First Amended Complaint
¶¶ 14-25; Opening Brief of Appellant at 10.

[42]     *See* 7/16/06 Letter from Steven B. Levine, Counsel for Trustee, to
Judge Lifland requesting a pre-motion conference or permission to file a motion

On June 21, 2006, Judge Lifland delivered his findings in an oral ruling and granted Debtors' Extension Motion.[43]  Judge Lifland agreed with Debtors, finding that the Trustee's Make-Whole Premium demand and its appeal of the Repayment Order were "inextricably intertwined" and concluded that the issue should not be considered by the bankruptcy court while the issue was on appeal to the District Court.[44]  Judge Lifland also noted that if the Trustee was successful in its appeal, the repayment of the Notes would be unwound rendering the issue of the Make-Whole Premium demand "moot unless the [D]ebtors' again seek authority to repay the first lien debt."[45]  Accordingly, Judge Lifland entered an order granting Debtors' request to extend their time to file an answer or otherwise respond to the Trustee's First Amended Complaint until ten days after the appeal is resolved by a final, non-appealable order.[46]  Judge Lifland also denied the Trustee's request to file a motion for summary judgment on its Make

---

for summary judgment.

[43]     *See* 6/21/06 Bench Ruling at 64-67.

[44]     *Id.* at 66-67 ("The central issue in both the appeal and adversary proceeding is virtually identical: to wit, whether the payment of the first lien debt without payment of the make whole premium is permissible.").

[45]     *Id.* at 67.

[46]     *See id.* at 67, 70-71.

-12-

Whole Premium demand without prejudice pending the outcome of the appeal.[47]

The Trustee filed its appeal to Judge Lifland's Extension Order on June 30,

2006.[48]

### G.    The Trustee's Appeal

On appeal to this Court, the Trustee presents two issues:  1) whether

the bankruptcy court erred in granting Debtors' Repayment Motion "without first

determining whether such repayment was permitted under the First Lien Indenture

absent simultaneous payment of any Make-Whole Premium due thereunder, and

. . . directing such repayment not in conformance with the terms and conditions of

the First Lien Indenture;" and 2) whether the bankruptcy court erred in granting

Debtors' Extension Motion and precluding the Trustee from filing a motion for

summary judgment regarding its Make-Whole Premium demand.[49]

## III.    LEGAL STANDARD

### A.    Jurisdiction

Section 158(a) of title 28 of the United States Code vests district

courts with appellate jurisdiction over bankruptcy court rulings.  Under section

---

[47]    *See id.* at 67.

[48]    *See* 6/30/06 Notice of Appeal.

[49]    Opening Brief of Appellant at 3.

-13-

158(a)(1), final orders of a bankruptcy court may be appealed as of right.[50]  Under

section 158(a)(3), non-final orders of a bankruptcy court may be appealed only

"with leave" of the district court.[51]

"The standards for determining finality in bankruptcy differ from

those applicable to ordinary civil litigation."[52]  "[A] bankruptcy proceeding is

umbrella litigation often covering numerous actions that are related only by the

debtor's status as a litigant and that often involve decisions that will be

unreviewable if appellate jurisdiction exists only at the conclusion of the

bankruptcy proceeding."[53]  Thus, the Second Circuit has "recognized that

Congress intended to allow for immediate appeal in bankruptcy cases of orders

that finally dispose of *discrete disputes within the larger case.*"[54]  "'Given the

strong federal policy against piecemeal appeals, a 'dispute,' for appealability

---

[50]     *See* 28 U.S.C. § 158(a)(1).  *Accord MCI WorldCom Commc'ns., Inc. v. Commc'ns. Network Int'l, Ltd. (In re WorldCom, Inc.)*, Nos. 02-13533(AJG), 04-04338(RJH)(AJG), 2006 WL 3592954, at * 1 (S.D.N.Y. Dec. 7, 2006).

[51]     28 U.S.C. § 158(a)(3).  *Accord In re WorldCom, Inc.*, 2006 WL 3592954, at * 1.

[52]     *In re The Bennett Funding Group, Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (citations and quotation marks omitted).

[53]     *Id.* (citations and quotation marks omitted).

[54]     *Id.* (emphasis in the original) (citations and quotation marks omitted).

purposes in the bankruptcy context, means at least an entire claim on which relief may be granted.'"[55] "In the context of an adversary proceeding brought to obtain a declaratory judgment, resolution of the 'discrete dispute' requires a final determination of the actual controversies between the parties that are the subject of the adversary proceeding."[56]

Federal Rule of Bankruptcy Procedure 8001(b) provides that in order for the district court to grant discretionary review of a non-final bankruptcy court order, the party seeking review must file a motion for leave to appeal.[57] However Bankruptcy Rule 8003(c) provides that "[i]f a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court . . . may grant leave to appeal or . . . deny leave to appeal but in so doing shall consider the notice to appeal as a motion for leave to appeal."[58] "While neither the Bankruptcy Code

---

[55]    *Id.* (quoting *Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 775-76 (2d Cir. 1992)).

[56]    *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 59 F.3d 327, 332 (2d Cir. 1995).

[57]    *See* Federal Rule of Bankruptcy Procedure 8001(b). *Accord In re Hooker Investments, Inc.*, 122 B.R. 659, 662 (S.D.N.Y. 1991) ("A motion for leave to appeal is normally a prerequisite to the granting of discretionary review.").

[58]    Federal Rule of Bankruptcy Procedure 8003(c). *Accord In re WorldCom, Inc.*, 2006 WL 3592954, at *2; *In re Adelphia Commc'ns Corp.*, No. 03 Civ. 8848(LTS)(DFE), 2006 WL 1114054, at *3 (S.D.N.Y. Apr. 26, 2006).

nor the Federal Rules of Bankruptcy provide standards for evaluating a motion for

leave to appeal, the majority of courts have applied the analogous standard for

certifying an interlocutory appeal set forth in 28 U.S.C. § 1292(b)."[59]  Section

1292(b) permits the discretionary review of an interlocutory order where the order

"involves a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation."[60]  Under section 1292(b), "only

'exceptional circumstances [will] justify a departure from the basic policy of

postponing appellate review until after the entry of a final judgment.'"[61]

### B.    Standard of Review

A bankruptcy court's exercise of its equitable authority is reviewed

for abuse of discretion.[62]  Abuse of discretion is "(i) a decision 'rest[ing] on an

---

[59]    *In re WorldCom, Inc.*, 2006 WL 3592954, at *2 (citing *In re Alexander*, 248 B.R. 478, 483 (S.D.N.Y. 2000); *In re Johns-Manville Corp.*, 45 B.R. 833, 855 (S.D.N.Y. 1984)).

[60]    28 U.S.C. § 1292(b).

[61]    *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)) (alteration in the original).

[62]    *See Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 673 (2d Cir. 2003). *See also Yadidi v. Herzlich (In re Yadidi)*, 274 B.R. 843, 847 (B.A.P. 9th Cir. 2002) ("The application of § 105 power is reviewed for abuse of discretion.").

-16-

error of law (such as application of the wrong legal principle) or a clearly

erroneous factual finding,' or (ii) a decision that, 'though not necessarily the

product of a legal error or a clearly erroneous factual finding[,] cannot be located

within the range of permissible decisions.'"[63] "Moreover, 'to further the purposes

of Chapter 11 reorganization, a bankruptcy judge must have substantial freedom to

tailor his [or her] orders to meet differing circumstances.'"[64]

The bankruptcy court's factual determinations are reviewed for clear

error and its legal conclusions de novo.[65] Clear error review permits reversal only

if the reviewing court is "'left with the definite and firm conviction that a mistake

has been committed.'"[66] Thus, if the factual findings of the bankruptcy court are

"plausible in light of the record viewed in its entirety," this Court "may not reverse

it even though convinced that had it been sitting as the trier of fact, it would have

---

[63]     *Schwartz,* 352 F.3d at 678 (quoting *Zervos v. Verizon N.Y., Inc.*, 252
F.3d 163, 169 (2d Cir. 2001)).

[64]     *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992)
(quoting *The Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
722 F.2d 1063, 1069 (2d Cir. 1983)).

[65]     *See MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006).

[66]     *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re
Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting
*United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

-17-

weighed the evidence differently. Where there are two permissible views of the

evidence, the factfinder's choice between them cannot be clearly erroneous."[67]

## C.   The Scope of the Bankruptcy Court's Equitable Powers

"[I]t is axiomatic that bankruptcy courts are 'courts of equity,

empowered to invoke equitable principles to achieve fairness and justice in the

reorganization process.'"[68]   Nevertheless, the equitable powers of the bankruptcy

courts derive from the statutory grant of such authority by Congress, and are

limited thereby.[69]   The Second Circuit has held:

> Section 105(a) of the Bankruptcy Code gives the court equitable
> power to issue any order, process, or judgment that is necessary
> or appropriate to carry out the provisions of this title. This Court
> has long recognized that Section 105(a) limits the bankruptcy
> court's equitable powers, which must and can only be exercised
> within the confines of the Bankruptcy Code. It does not authorize
> the bankruptcy courts to create substantive rights that are
> otherwise unavailable under applicable law, or constitute a roving
> commission to do equity.[70]

---

[67]   *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

[68]   *Schwartz*, 352 F.3d at 680 (Straub, J., concurring) (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

[69]   *See New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003).

[70]   *Id.* (citations and quotation marks omitted).

-18-

Thus, the equitable powers of the bankruptcy court cannot be used to contravene the provisions of the Bankruptcy Code.[71]  The Supreme Court has also ruled that a bankruptcy court may not invoke equity to modify rights or interests created by state law, except to "the extent of actual conflict with the system provided by the Bankruptcy [Code]."[72]

## D.     The Bankruptcy Court's Powers Under Section 363(b)

Section 363(b)(1) of title 11 of the United States Code provides that: "The trustee, after notice and a hearing, may use . . . other than in the ordinary course of business, property of the estate."[73]  The Second Circuit has "adopted a rule that 'requires a judge determining a § 363(b) application [to] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.'"[74]  "In fashioning its findings, a bankruptcy judge must

---

[71]     *See Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 184 (2d Cir. 2005).

[72]     *Butner v United States*, 440 U.S. 48, 54 n.9 (1979).  *Accord In re Gifford*, 256 B.R. 661, 664 (Bankr. D. Conn. 2000) (applying *Butner,* which was decided under the Bankruptcy Act, to the new Bankruptcy Code); *In re Morton,* 866 F.2d 561, 563-64 (2d Cir. 1989) (same).

[73]     11 U.S.C. § 363(b)(1).

[74]     *The Official Comm. Of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (quoting *In re Lionel Corp.*, 722 F.2d at 1071).

not blindly follow the hue and cry of the most vocal special interest groups; rather

he should consider all salient factors pertaining to the proceeding and,

accordingly, act to further the diverse interests of the debtor, creditors, and equity

holders alike."[75]  "[M]ost importantly, perhaps," the bankruptcy judge should

consider "whether the asset is increasing or decreasing in value."[76]  "Section

105(a) provides the authority for the bankruptcy court to carry out the provisions

of section 363(b)."[77]

### E. The Bankruptcy Court's Powers Under Federal Rule of Bankruptcy Procedure 9006(b)(1) and Local Rule 7056-1(a)

Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Rule

9006(b)(1)") expressly provides that "the court for cause shown may at any time in

its discretion . . . with or without motion or notice order the period enlarged if the

request therefor is made before the expiration of the period originally

prescribed . . . ."[78]

---

[75]   *In re Lionel Corp.*, 722 F.2d at 1071.

[76]   *Id.*

[77]   *Official Comm. of Unsecured Creditors of Enron Corp. v. Enron Corp.* (*In re Enron Corp.*), 335 B.R. 22, 27 (S.D.N.Y. 2005).

[78]   Federal Rule of Bankruptcy Procedure 9006(b)(1).

Rule 7056-1(a) of the Local Rules for the United States Bankruptcy

Court, Southern District of New York ("Rule 7056-1(a)"), provides that "no party

shall file a motion for summary judgment without first seeking a pre-motion

conference."[79]  The comment to Rule 7056-1(a) explains that since most trials in

bankruptcy court are bench trials, the rule provides the bankruptcy court the

opportunity to determine if "it would be more cost-effective to resolve all issues at

trial" and "notify the parties of its observations at a pre-motion conference."[80]

"The rule does not limit a party's right to file a motion for summary judgment after

the pre-motion conference."[81]

---

[79]    Local Rules for the United States Bankruptcy Court, Southern District of New York, Rule 7056-1(a).

[80]    Comment to Rule 7056-1(a). *Accord Tognetti v. Jeffrey Lee Tognetti, Syndicate Trading, LLC (In re Tognetti)*, Nos. 03-37171, 04-9400(CGM), 04-9165(CGM), 2006 WL 2587544, at * 7 (Bankr. S.D.N.Y. June 21, 2006) ("The purpose of Local Rule 7056-1(a) is to avoid bringing unnecessary summary judgment motions.").

[81]    Comment to Rule 7056-1(a).

## IV.   DISCUSSION

### A.   Jurisdiction Over the Bankruptcy Court's Orders

This Court's authority to decide this appeal is not in dispute, however

this Court is "duty bound to examine this issue *sua sponte*."[82]  This Court has

appellate jurisdiction over the bankruptcy court's Repayment Order as it

constitutes a final order within the meaning of section 158(a)(1) of title 28 of the

United States Code.[83]  Although the Trustee claims the Repayment Order was

improper because the Repayment Order did not include the Make-Whole Premium

or a declaration that the Make-Whole Premium is not due, the Trustee's claim for

the Make-Whole Premium is now pending in the bankruptcy court in an adversary

proceeding and thus constitutes a separate dispute within the meaning of section

158(a)(1).  Therefore, the claim for the outstanding principal of the Notes

---

[82]     *Cor Route 5 Co., LLC v. The Penn Traffic Co. (In re Penn Traffic Co.)*, 466 F.3d 75, 77 (2d Cir. 2006) (citation and quotation marks omitted).  The Trustee states this Court has authority to decide appeals from final orders of the bankruptcy court under 28 U.S.C. § 158(a) and that the Repayment Order constitutes a final order.  *See* Opening Brief of Appellant at 2-3 & n.4.  Debtors do not dispute this Court's authority to decide this appeal or that the Repayment Order constitutes a final order.  Neither party raised the issue of whether the Extension Order or the bankruptcy court's denial of the Trustee's request to move for summary judgment constitutes an appealable order.

[83]     *See In re Enron Corp.*, 335 B.R. at 27 (finding a bankruptcy court's section 363(b)(1) order constituted a "final order within the meaning of 28 U.S.C. § 158(a)(1)").

constitutes an "entire claim on which relief may be granted," the Repayment Order

disposes of a discrete dispute and no further bankruptcy court proceedings are

required to resolve this dispute.[84]

The bankruptcy court's Extension Order and denial of the Trustee's

request to move for summary judgment in the adversary proceeding are not final

orders as they are clearly interlocutory and do not involve a "final determination"

of the controversy over whether the Make-Whole Premium was triggered by the

Repayment Order.[85]  The Trustee did not move for leave to appeal these orders but

this Court will treat the Trustee's Notice of Appeal as a motion for leave to

appeal.[86]  However, as neither the Extension Order nor the bankruptcy court's

denial of the Trustee's request to move for summary judgment "involve[] a

controlling question of law as to which there is substantial ground for difference

---

[84]      *In re The Bennett Funding Group, Inc.*, 439 F.3d at 160 (citations and
quotation marks omitted).

[85]      *In re Prudential Lines, Inc.*, 59 F.3d at 332 ("In the context of an
adversary proceeding brought to obtain a declaratory judgment, resolution of the
'discrete dispute' requires a final determination of the actual controversies
between the parties that are the subject of the adversary proceeding.").

[86]      *See* Federal Rule of Bankruptcy Procedure 8003(c).

-23-

of opinion," the Trustee's appeal of these orders is dismissed for lack of appellate jurisdiction.[87]

## B.   The Trustee's Appeal of the Repayment Order

In its appeal of the Repayment Order, the Trustee does not argue that the bankruptcy court erred in finding that a good business reason supported the granting of Debtors' Repayment Motion.  Rather, the Trustee's appeal boils down to the notion that because the bankruptcy court failed to order Debtors to pay Noteholders the Make-Whole Premium or make a determination that the Make-Whole Premium was not due, the bankruptcy court "violated the Noteholders' contractual rights and impaired their claims outside of a chapter 11 plan."[88] Nothing could be further from the truth because the bankruptcy court merely ordered the payment of the outstanding principal of the Notes for now so Debtors' estates would stop losing money, and preserved all parties' rights to litigate the Trustee's Make-Whole Premium Demand later.[89]  In addition, the issue of whether

---

[87]   28 U.S.C. § 1292(b).

[88]   Opening Brief of Appellant at 3.

[89]   The Trustee argues that litigating its Make-Whole Premium demand would not cause a significant additional loss to Debtors' estate because the Trustee claims its Make-Whole Premium demand could be resolved quickly on summary judgment. *See* Opening Brief of Appellant at 10-11, 23 n.24.  This argument is not only refuted by Debtors' claim that "immediate litigation would involve a protracted and expensive battle," but it is also speculative since the adversary

-24-

Debtors' Repayment Motion triggered the payment of the Make-Whole Premium

under the Indenture is now the subject of the Trustee's adversary proceeding. By

initiating an adversary proceeding before the bankruptcy court could hold a

hearing on Debtors' Repayment Motion, the Trustee committed itself to litigating

the merits of its Make-Whole Premium claim in a separate action. The Trustee

cannot now correct course and claim that the bankruptcy court should have

decided the merits of the Trustee's Make-Whole Premium demand before it ruled

on Debtors' Repayment Motion.

The Trustee's appeal is also meritless because it relies on the

assumption that the granting of Debtors' Repayment Motion triggered the Make-

Whole Premium. For example, the Trustee argues that by grounding the

Repayment Order in section 363(b), Judge Lifland "entirely misse[d] the point,"

because, according to the Trustee, "[w]hat is at issue here is not a *'use'* of the

Debtors' cash, but a *treatment* of the First Lien Noteholders' claim which

dramatically departed from their contractual rights."[90] In addition, the Trustee

---

proceeding is still in the pleading stage. Reply Brief of Debtors-Appellees at 4. In
any event, delaying repayment of the principal amount of the Notes pending
resolution of the demand for the Make-Whole Premium would cause additional
and unnecessary losses to Debtors' estates.

[90]     Opening Brief of Appellant at 15 (emphasis in the original).

claims that it "would have had no basis for objecting to a redemption of the First

Lien Notes that conformed to the First Lien Indenture's contractual requirements

and included the Make-Whole Premium."[91] At the same time, the Trustee

concedes that the merits of its Make-Whole Premium demand are not the subject

of this appeal because they are the subject of its adversary proceeding before the

bankruptcy court.[92]

           The Trustee cannot simultaneously maintain these opposing

positions. The Trustee cannot maintain that the bankruptcy court violated the

Noteholders' rights by forcing them to receive payment without the Make-Whole

Premium while conceding that this very issue is now before the court in the

posture of an adversary proceeding. The merits of the Trustee's Make-Whole

Premium demand were not the subject of Debtors' Repayment Motion and they are

not the subject of this appeal. Accordingly, the legal theories offered by the

Trustee to support its argument that the bankruptcy court's decision violated the

---

[91] *Id.* at 13. *See also* Reply Brief of Appellant at 6 ("Had the Debtors complied with the provisions of the First Lien Indenture that required payment of a Make-Whole Premium in connection with a redemption, the First Lien Trustee may not have had a basis for objecting to the use of these funds.").

[92] *See* Reply Brief of Appellant at 8 ("The Bankruptcy Court was careful not to cite the merits of the Make-Whole Premium issue as a basis for the [Repayment] Order" and "that issue is not the subject of this appeal.").

Noteholders' rights are irrelevant to this appeal.  In any event, the bankruptcy

court preserved all parties' rights to litigate the merits of the Trustee's Make-

Whole Premium demand.[93]  Should the Trustee prevail in its adversary proceeding,

the Noteholders shall be entitled to the appropriate relief at that time.  Should the

Trustee fail, the Noteholders have already been made whole.

Finally, the Trustee does not argue that the bankruptcy court erred in

finding a good business reason existed for granting Debtors' Repayment Motion.

Indeed, it is undisputed that the repayment of the outstanding principal of the

Notes stopped the unnecessary loss of funds from Debtors' estates.  Accordingly,

Judge Lifland's granting of Debtors' Repayment Motion was an appropriate use of

cash under sections 363(b) and 105(a).

## V.    CONCLUSION

For the foregoing reasons, the bankruptcy court's Repayment Order is

affirmed while the Trustee's appeal of the bankruptcy court's Extension Order and

denial of the Trustee's request to move for summary judgment is dismissed for

lack of appellate jurisdiction.

---

[93]    *See* Amended Order Authorizing Repayment of Principal of First
Lien Debt ¶ 3 ("All parties in interest affected by the Debtors' principal repayment
authorized herein shall retain (a) all rights to assert any valid claims or defenses in
response and (b) all rights under the Final Cash Collateral Order unless and until
the Court orders otherwise in respect to the Final Cash Collateral Order.").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
           January 9, 2007

## - Appearances -

*For Appellant:*

Edward S. Weisfelner, Esq.
Sigmund S. Wissner-Gross, Esq.
BROWN RUDNICK BERLACK ISRAELS LLP
Seven Times Square
New York, New York 10036
(212) 209-4800

Joseph F. Ryan, Esq.
Steven B. Levine, Esq.
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

*For Appellees:*

Richard M. Cieri, Esq.
Edward O. Sassower, Esq.
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, New York 10022
(212) 446-4800

Jeffrey S. Powell, Esq.
Stephen E. Hessler, Esq.
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, D.C. 20005
(202) 879-5000

*For The Official Committee of Unsecured Creditors:*

Michael S. Stamer, Esq.
Fred S. Hodara, Esq.
Abid Qureshi, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000